**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| **VESTER KAY SCURLOCK-FERGUSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:01CV1122** |
| | ) | |
| **CITY OF DURHAM,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court for consideration of the sole remaining claim in this action – the claim of Plaintiff Vester Kay Scurlock-Ferguson that she was transferred to the Budget Department of the City of Durham in July of 2000 in retaliation for her filing of an EEOC charge against the City. All other claims made by Plaintiff Scurlock-Ferguson in this action have previously been decided against her.[1] *See* Docket No. 36, Order and Judgment of March 12, 2004.

[1] It is not clear from her most recent briefing that *pro se* Plaintiff Scurlock-Ferguson understands that her only surviving claim before this court is for retaliation in her July, 2000 transfer to the Budget Department. In final briefing to the Court, she argues that "[t]here are at *least* 4 areas where retaliation has occurred: transfer, termination, FMLA, and the directing of employees not to talk to the Plaintiff . . ." (Docket No. 59 at 14.) However, all claims made by Plaintiff in this case have been decided by this Court in Defendant's favor, except that her claim of retaliation in her transfer to Budget has been returned to this court on remand from the Court of Appeals. The order of remand directed this court to consider the limited question of "whether Scurlock-Ferguson's transfer to the Budget Department could be considered an actionable adverse employment action." *See* Docket No. 47, Per Curiam Order of the Fourth Circuit of vacation and remand, at 3.

**Procedural Background**

Plaintiff Scurlock-Ferguson filed this action in Durham County Superior Court on November 6, 2001. She alleged a hostile work environment, a failure to promote, and retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. She additionally alleged that her employment with the City was terminated in retaliation for taking leave under the Family and Medical Leave Act of 1993 (29 U.S.C. § 2601, *et seq.*), she asserted a race discrimination claim under section 1981, and she stated state law claims for intentional and negligent infliction of emotional distress. Defendant ("the City") removed the action to this Court.

After a period of discovery, Defendant filed a motion for summary judgment on all claims of the complaint. On March 18, 2003, the undersigned recommended that Defendant's motion be granted in full and that Plaintiff's cross-motion be denied. (Docket No. 27.) On March 12, 2004, Chief Judge James A. Beaty, Jr. entered an Order and Judgment adopting the recommendation and dismissing this case with prejudice. (Docket No. 36.)

Plaintiff appealed to the Court of Appeals for the Fourth Circuit, and that court found no error. Plaintiff then filed a petition for a writ of certiorari with the United States Supreme Court. The Supreme Court granted Plaintiff's petition and remanded the case for further consideration in light of newly decided *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). On April 6, 2007, the Court of Appeals remanded the case to this Court for

reconsideration of Plaintiff's retaliation claim – only as it related to her July 2000 transfer from the Human Relations Department to the Budget Department – in light of *Burlington*.

**Factual Background**

On summary judgment review, which continues on this remand, all disputed facts are taken in the light most favorable to the nonmoving party. This factual summary sets out the background to all claims in the litigation, as it was described by the Court in the Recommendation of March 18, 2003. (Docket No. 27.)

Plaintiff Vester Kay Scurlock-Ferguson, an African-American female, was an employee of the City of Durham from 1978 until her termination from employment on December 31, 2000. She worked for a number of years in the Human Resources Department. In 1994 she became the Employee Relations Coordinator and assisted in processing employee grievances and discrimination complaints. Plaintiff's last position with the City was as a Budget Analyst I with the Budget Department.

During 1998, following her receipt of a memorandum from Human Resources Director Alethea Bell, an African-American female, Plaintiff began to experience what she believed was harassment directed toward her and other black females. (Deposition of Vester Kay Scurlock-Ferguson ("Pl.'s Dep.") at 107-09.) Bell's memorandum, described as a "diversity plan," noted that the department was comprised of mostly black females, and that more Caucasians, Hispanics, and males were needed. (*Id*. at 107-08.) Plaintiff attests that she began to receive reports of unfair treatment from other black female employees. Plaintiff

received an unsolicited job notice from Bell for a vacant position in Greensboro, and she perceived this action by Bell to be harassing. Plaintiff also attests that Bell responded to her complaints about job difficulties by stating only that she should seek employment elsewhere if she could not do her job. (*Id*. at 116-17.)

In January 2000, Plaintiff began to perceive that co-workers were spying on her. (*Id*. at 51-53.) She states that Beverly Zimmerman told her that Bell asked Zimmerman to keep an eye on Plaintiff's comings and goings. Additionally, Plaintiff alleges that Dawn Holmes peeped into a bathroom stall occupied by Plaintiff, that Michael McGinnis peeped into her office without saying anything, and that on several occasions Alethea Williamson walked by the doors of offices where Plaintiff was working. (*Id*. at 56-64.)

While working in Human Resources, Plaintiff received a series of newspaper articles sent to her anonymously. The materials included a cartoon depicting a Klansman as "stupid." (*Id*. at 152-54, Ex. 4.) Plaintiff was upset and reported the matter to Bell, who investigated. Although the sender was never identified, Plaintiff received no further articles. (*Id*. at 155.)

Plaintiff attests that Bernard Farmer, an African-American male who was her direct supervisor, harassed her by asking another employee to sit in on Plaintiff's performance evaluation, although when Plaintiff objected, the other employee left. (*Id*. at 118.) On another occasion, Plaintiff felt harassed when a black female co-worker stated to Plaintiff "there's too many of y'all in here." (*Id*. at 121.) Plaintiff states that Bell harassed her by telling her that she [Plaintiff] was in cahoots with the EEOC. (*Id*. at 67.) And Plaintiff felt

harassed when two Caucasian managers from other departments demonstrated displeasure with her investigation of discrimination complaints. (*Id*. at 138-41.)

In March 2000, Plaintiff was denied a promotion to Assistant Human Resources Director. (*Id*. at 146-50.) On April 24, 2000, Plaintiff filed an EEOC charge complaining of her non-selection. Additionally, she asserted that she had been subjected to harassment which Bell and Farmer had failed to correct. She claimed that she had experienced retaliation and race and sex discrimination. (*Id*. at 106, Ex. 2.)

On May 1, 2000, Plaintiff was placed on paid administrative leave pending an investigation concerning a discrepancy in a travel voucher she had submitted for a workshop she attended in Charlotte, North Carolina, in April. Upon completion of the investigation, Plaintiff received a written reprimand from Bernard Farmer, director of personnel, for failure to follow policy and procedure for her overnight stay in Charlotte.

On or about July 1, 2000, Plaintiff was transferred from the Human Resources Department to the Budget Department. The transfer did not affect her salary or benefits. Plaintiff was informed that this would be a temporary re-assignment to see how well she worked out in the Budget Department. (*Id*. at 164.) Her responsibilities with Budget included financial analysis for which, according to Plaintiff, she received no training.

The City asserts that Plaintiff, upon her arrival in Budget, experienced performance difficulties. According to the City, Plaintiff was expected to demonstrate substantial initiative and to learn the job primarily through informal training, including contacting supervisors and

co-workers with any questions. (Deposition of Laura Gill ("Gill Dep.") at 44, 47.) Defendant maintains that Plaintiff was not successful in her work as a budget analyst. She failed to learn or seek guidance. (*Id*. at 55, 58.) Plaintiff, on the other hand, states that she received a lack of assistance from her immediate supervisor, Nick Curtis, who was too busy to help her. (Pl.'s Dep. at 188.)

The City asserts that during Plaintiff's absence from Human Resources the City discovered performance shortfalls on her part. While Plaintiff was on paid administrative leave, her supervisors discovered that she had submitted a late and inaccurate report to the Employment Security Commission. (Deposition of Alethea Bell ("Bell Dep.") at 66-67.) Plaintiff denies having submitted any late reports. (Pl.'s Dep. at 91, 95.) She believes that Bell falsely informed City Manager Lamont Ewell that Plaintiff had submitted late and inaccurate reports, but she does not know why Bell did so. (*Id*. at 93.) Additionally, the City proffers evidence that it discovered that Plaintiff failed to maintain a log of disciplinary actions against City employees.

In late October 2000, Laura Gill and Nick Curtis met with Plaintiff to discuss their conclusion that Plaintiff was a "poor fit" in Budget. (Gill Dep. at 54.) According to Defendant, Plaintiff agreed that she was a poor fit. (*Id*. at 63.) When Gill told Human Resources Director Bell that Plaintiff had not succeeded in Budget, Bell responded that she wanted to keep the transferee she had received in Human Resources to replace Plaintiff. (*Id*. at 60-61.)

On or about November 2, 2000, Plaintiff left work pursuant to the Family and Medical Leave Act, complaining mainly of work-related stress and elevated blood pressure. Plaintiff had a medical history of hypertension, high blood pressure, mild depression, and stress. Plaintiff provided the City's Employee Health Services Department with a note from her doctor, Dr. Timothy O'Donnell, which stated that Plaintiff was invoking her rights under the FMLA. (Pl.'s Dep. at 157, Ex. 6.) On November 7, while on paid medical leave, Plaintiff wrote the City requesting additional information regarding her anticipated return to the Human Resources Department. (*Id*. at 169-79, Ex. 7.) Gill responded by informing Plaintiff that all work-related issues would be addressed upon her return from leave. (*Id*. at 171, Ex. 8.)

On November 14, Plaintiff obtained a second note from Dr. O'Donnell stating that "patient reports she will be able to return to work 12/13/00." (*Id*. at 156, Ex. 5.) On December 13, Plaintiff returned to work and reported to Assistant Human Resources Director Kevin Patton, who initially referred her to Budget. She then spoke with Nick Curtis who understood she was to return to Human Resources. (*Id*. at 172-74.) Plaintiff returned to see Patton, who then informed her to return home, with pay, to await further guidance. (*Id*. at 174.)

Thereafter, according to the City, Gill and Bell consulted with City Manager Lamont Ewell regarding Plaintiff's work status. Gill had previously recommended that Plaintiff be removed from Budget for poor work performance, and she refused to reverse her prior

decision. (Gill Dep. at 54, 76-77, 88.) Bell declined to accept Plaintiff back into Human Resources. (Bell Dep. at 188.) Bell attests that she continued to believe that Plaintiff would perceive her workplace to be unsafe due to continued perceptions of spying by co-workers. Additionally, the City says, Farmer had discovered Plaintiff's failure to submit timely and accurate ESC reports and to maintain a disciplinary log. (Docket No. 16, Affidavit of Bernard Farmer ("Farmer Aff.") ¶ 15.) Farmer recommended retention of the new Employee Relations Coordinator who had replaced Plaintiff, and declined to recommend that Plaintiff be transferred into her former job in Human Resources. (*Id.* )

In reliance upon information received from Bell and Gill, City Manager Ewell authorized the termination of Plaintiff's employment. By letter dated December 19, 2000, Ewell informed Plaintiff that her employment was terminated effective December 31, 2000 due to poor work performance. (Pl.'s Dep. at 176, Ex. 9.)

**Discussion**

This Court, in its earlier summary judgment decision, determined that the City was entitled to judgement on all of Plaintiff's claims. As one part of that decision, the Court ruled that Plaintiff Scurlock-Ferguson had raised no triable issue of retaliation with regard to her July 2000 transfer to the Budget Department of the City because that lateral transfer did not, as a matter of law, constitute an "adverse employment action," a prerequisite to a claim of retaliation. (Docket No. 27, Recommendation at 12-13.) The ruling was made on the basis of the summary judgment record and the governing law in the Fourth Circuit at the

time. *See Boone v. Goldin* , 178 F.3d 253, 255-56 (4th Cir. 1999) (job reassignment not an adverse employment action where it had no "significant detrimental effect" on plaintiff, such as a "decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion").

The Fourth Circuit affirmed dismissal of all claims, including the retaliation claim, citing *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375-76 (4th Cir. 2004)(noting that a job reassignment "can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect," (citing *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999), and that absent "any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *Id*. at 256-57.).

By the time this case reached the United States Supreme Court, the Supreme Court had decided *Burlington*, a case that altered the test for "adverse employment action" in retaliation cases as it had been articulated in the Fourth Circuit. In *Burlington*, the Supreme Court held that, in the context of a retaliation case, a challenged employment action may be characterized as adverse action if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68. The Court determined that the test for adverse employment action should be broader for protection of retaliation victims than for victims of discrimination. *Id.*

This case was remanded to this Court for consideration of Plaintiff's retaliation claim in light of *Burlington.* The Court completed its initial consideration on June 2, 2008, and found that Plaintiff had submitted sufficient evidence regarding her transfer to the Budget Department to support a reasonable inference that the transfer could constitute an adverse employment action. (Docket No. 61.) Accordingly, the Court will now proceed to review other grounds on which Defendant has moved for summary judgment on Plaintiff's retaliation claim. The parties have completed supplemental briefing on all relevant issues. (Docket Nos. 59, 60.) Having reviewed the parties' arguments, the Court enters its further recommendation concerning Defendant's summary judgment motion as it relates to Plaintiff's claim of retaliation.

In order to establish a prima facie case of retaliation, a plaintiff must show three elements: (1) that she engaged in protected activity; (2) that an adverse action was taken against her; and (3) that there was a causal link between the protected activity and the adverse employment action. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). An employer may rebut the prima facie case by articulating a nondiscriminatory reason for the adverse action. *Id*. at 258. If the employer meets its burden of production, the presumption of discrimination created by the prima facie case "drops from the case." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.10 (1981). After an employer articulates such a reason, an employee must show that the explanation for the

action is a pretext for intentional retaliation. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

The summary judgment record shows that on April 24, 2000, Plaintiff filed a charge with the EEOC claiming that Defendant discriminated against her by failing to select her for a promotion. Plaintiff complained of the actions of Alethea Bell and Bernard Farmer. The charge constitutes "protected activity" under Title VII of the Civil Rights Act of 1964. The Court has found that Plaintiff has produced sufficient evidence, albeit minimally, that her transfer to the Budget Department could be considered "an adverse action." Thus, Plaintiff has shown elements (1) and (2) of a prima facie case of retaliation. The Court turns to element (3): whether Plaintiff has produced sufficient evidence of a causal link between her protected activity and the adverse employment action against her.

Plaintiff's primary evidence that her transfer was caused by a retaliatory motive is her perception that co-workers and supervisors were following and spying on her, and her receipt of a memo from Bell stating that this belief prevented Plaintiff from being effective in her job.

Plaintiff has stated on deposition that she perceived that she was treated unfairly and was subjected to retaliation. (Pl.'s Dep. at 183.) Generally, subjective beliefs are insufficient, standing alone, to support a retaliation claim. *See Mackey v. Shalala*, 360 F.3d 463, 469-70 (4th Cir. 2004) (plaintiff's self-serving opinions are insufficient to establish a case of discrimination).

In supplemental briefing to the Court, Plaintiff argues that her transfer to the Budget Department happened "five working days" after she filed the charge of discrimination, and that this proximity in time raises an inference of a causal link between the charge and her transfer. (Docket No. 59, Pl.'s Supplemental Br. at 3.) The Court considers Plaintiff's "closeness-in-time" argument to lack evidentiary force, however, under the facts of this case. Plaintiff filed her EEOC charge on April 24, 2000. She was transferred to Budget in July 2000. In between, Plaintiff was placed on paid leave pending an investigation into a discrepancy in a travel voucher she had submitted – an investigation that resulted in a reprimand of Plaintiff. Apparently, Plaintiff's "five working days" argument disregards the substantial time period when she was on administrative leave. Her closeness-in-time argument loses force and effect since her transfer to Budget in fact took place many weeks after she filed an EEOC charge.

Even if the Court were to assume a *prima facie* case by Plaintiff of retaliation, Defendant has met its burden of production to come forward with a non-discriminatory reason for Plaintiff's transfer, i.e., that Plaintiff was transferred as the result of her poor job performance and poor working relationships in Human Resources. These are, on their face, legitimate and non-retaliatory reasons. Defendant has produced evidence contemporaneous to the events that tends to show Plaintiff's transfer to a position resulted not from retaliation but from a desire to give Plaintiff a fresh start in a different setting within the City's organizational structure. This evidence is strongly bolstered by the fact that Plaintiff

received no reduction in pay or benefits as a part of her lateral transfer. At the time of her transfer, Plaintiff had been placed on administrative leave for violation of travel reimbursement policies. Defendant has produced evidence that while Plaintiff was on leave, other deficiencies in her performance were discovered. Some of Plaintiff's evidence is in fact consistent with Defendant's evidence that the transfer of Plaintiff was motivated by an attempt by Defendant to alleviate poor work relationships with other employees: Plaintiff had expressed her belief that she was being stalked and spied on by her co-workers and supervisors in Human Resources.

Further, there is evidence that the reciprocal transfer of employees between Human Resources and Budget was related to the desire of Laura Gill, the head of Budget, to find a better placement for her employee Steve Martin. (Gill Dep. at 27-28, 41.) Plaintiff's long experience with the City formed a reasonable basis for belief by Bell that Plaintiff was qualified for the Budget Analyst position then held by Martin. Defendant has produced evidence that it was reasonable for Bell to believe that a transfer to Budget would offer Plaintiff a better working environment by allowing her to feel more comfortable and providing her new work duties. (Bell Dep. at 35-37; Gill Dep. at 36-37.)

In response to Defendant's proffer of evidence articulating legitimate reasons for Plaintiff's transfer to the Budget Department, Plaintiff has failed to forecast evidence sufficient for a reasonable jury to find retaliation in this case. Laura Gill, who participated in the decision to transfer Plaintiff, had not been accused by Plaintiff in her EEOC charge,

and Plaintiff fails to demonstrate that Gill was motivated in any fashion to retaliate against her or acted on the basis of reasons and motivations other than those shown by Defendant's evidence. (*See* Pl.'s Dep., Ex. 2, Charge of Discrimination.) Bell stated on deposition that the reciprocal transfer of two employees between Budget and Human Resources was designed to meet Plaintiff's concerns about her safety in Human Resources and to give both Plaintiff and the Budget employee, Mr. Martin, new opportunities to succeed. (Bell Dep. at 35-37.) Plaintiff was expected to demonstrate initiative and develop her job skills primarily through informal training, including contacting supervisors and co-workers with any questions. (Gill Dep. at 44, 47.) Plaintiff has presented no evidence regarding job tasks or assignments that show that this was an unreasonable expectation.

Ultimately, Plaintiff failed to perform satisfactorily in the Budget Department. (Gill Dep. at 58, 66, 88.) Her own perception that her training was inadequate is insufficient to support her retaliation claim. *See Mackey*, 360 F.3d at 469-70. Her statement that her immediate supervisor in Budget, Nick Curtis, was too busy to help her raises no inference of retaliation by Defendant since Plaintiff has presented no evidence that could tie Curtis to any retaliatory motive. Furthermore, all of the evidence regarding the transfer of Plaintiff to Budget must be viewed in the light that the transfer, albeit sufficient to be an adverse employment action under the broad *Burlington* test, was in fact a lateral transfer that caused Plaintiff no loss in salary or benefits. The evidence of record shows convincingly that the

transfer was but one part of a "swap" of two employees between two departments designed to give each employee a better chance to succeed.

Plaintiff Scurlock-Ferguson now proceeds without counsel, and her supplemental brief to the Court on the single remaining claim in this action – retaliation in her transfer to the Budget Department – demonstrates that she has not fully understood the procedural posture of this case. She attempts to re-argue many of her claims that are now foreclosed by rulings of this Court. For example, she opens her Supplemental Brief with the statement that, "Plaintiff submits this Supplemental Brief with evidence to support why it is requested and would be proper for the Court to reject Defendant's request for Summary Judgment *on all issues* inclusive of those remaining issues regarding Plaintiff's transfer to the Budget Office in light of *Burlington N. & Santa Fe Ry. Co. v. White*." (Docket No. 59 at 1)(emphasis added.) Plaintiff has thus argued broadly, and often on irrelevant matters, in her supplemental brief. The Court finds no argument or evidence by Plaintiff that could allow her retaliation claim to proceed to trial.

On the basis of the analysis set out above, the Court finds that Plaintiff has failed to produce sufficient evidence of the third element of her *prima facie* case of retaliation, i.e., a causal link between her EEOC charge and her lateral transfer to the Budget Department. Further, even assuming a *prima facie* case, Plaintiff has failed to create a triable issue that the nondiscriminatory reasons articulated by Defendant were pretext for retaliation. Accordingly, summary judgment should now be entered in favor of Defendant on the sole

claim remaining for determination in this case. A final judgment should be entered dismissing this case with prejudice.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: February 2, 2009